## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NOEL VINCENT THOMAS | ) | |
| PRO SE LITIGANT | | Case: 1:25-cv-02928 JURY DEMAND |
| PLAINTIFF | | Assigned To : Unassigned |
| | | Assign. Date : 8/28/2025 |
| - vs - | ) | Description: Pro Se Gen. Civ. (F-DECK) |
| UNITED STATES POSTAL | ) | |
| SERVICE, | ) | **DEMAND FOR JURY TRIAL** |
| WAL-MART INC., | ) | |
| NDC ASSET MANAGEMENT LLC, | ) | |
| JAMES ALLEN, ANNIE CASTRO, | ) | |
| DEFENDANTS. | ) | |

RECEIVED
Mailroom

AUG 2 8 2025

Angela D. Caesar, Clerk of Clerk
U.S. District Court, District of Columbia

## COMPLAINT WITH DEMAND FOR JURY TRIAL

[1] Plaintiff, Noel Vincent Thomas, brings this action for the violations of state and federal laws against United States Postal Service, Wal-Mart Inc., and NDC Asset Management LLC and its officials for the alleged claims listed below .

## JURISDICTION AND VENUE

[2] This action is for the claims of fraud, negligence, conspiracy, race discrimination, and Breach of contract / Nuisance, pursuant to *28 U.S.C. § 1331*, *42 U.S.C. § 3604(b)* and *42 U.S.C. § 3617*.

[3] Under constitutional laws does this action arises and this Court has jurisdiction over civil matters where the citizens are of different states pursuant to *28 U.S.C. § 1332*.

[4] This venue is proper in the Washington Division of the United States District Court for the District of Columbia because the alleged acts were committed partially by USPS and the Defendants reside in Washington, DC and the business and transactions are native to this jurisdiction in pursuant to *28 U.S.C. § 1391(e)(1)*.

## PARTIES INVOLVED

[5] Plaintiff resides in Tampa, Florida and is a U.S. veteran who is currently retired and live in low-income housing under the HUD-VASH program.

[6] Defendant United States Postal Service is a federal agency that provide mailing services.

[7] Defendant Wal-Mart Inc. is a national retailer

[8] Defendant, NDC Asset Management, LLC, is a property management company.

[9] Defendant, James Allen is the Vice President, Director of Operations for Florida NDC Asset Management, LLC.

[10] Defendant, Annie Castro is the Florida local property manager for NDC Asset Management, LLC.

## STATEMENT OF FACTS

*The Defendant's years of violations of housing laws*

**[11]** For years Plaintiff had been attempting to encourage Mariposa or NDC Asset Management to make the necessary maintenance repairs and provide a safe and secure environment but only accomplished the opposite, therefore Plaintiff was compelled to take extreme measures to obtain any degree of a resolution to this problem. Starting around the pandemic period, the NDC property management group apparently decided that slumlord status had become the standard of operations and that there was no need to invest large sums of money into decaying real estate, so they did the bare minimum to make it appear that they were following the property maintenance laws.

**[12]** On March 9, 2021, Plaintiff sent Mariposa/NDC Asset Management a series of photos demonstrating the horrid condition that the property was in and informed them that homeless people was living in the restricted area of the complex and that the squatters attempted to break into his apartment on several occasions using the back window as a point of entry and that Plaintiff reported the issue to the sheriff office but nothing was done to remedy the situation *(See, E-1a, E-1b)*.

**[13]** On February 7, 2022, Plaintiff sent a series of emails to Mariposa/NDC Asset Management addressing a variety of problems and this was the during the period of Plaintiff's annual inspection by a contractor for Tampa Housing Authority who had documented some of those issues and failed the first inspection and was about to do the same for the second but Plaintiff told him that he would contact code enforcement since they had legal authority to penalize the landlord *(See, E-2a, 2b, 2c, 2d, 2e, 2f)*.

**[14]** And further, on March 7, 2022, Plaintiff sent an email with photos attached, to Mariposa/NDC Asset Management complaining about the unsafe, unclean and unsecure condition of their property and that squatters were living in the restricted area behind the complex and that Plaintiff had reported the matter to the sheriff department and code enforcement but nothing was really done to resolve the problem *(See, E-3a, 3b, 3c, 3d, 3e)*.

***Plaintiff constant attempts to contact government entities for the failed maintenance repair issues.***

**[15]** Then on April 13, 2022, Plaintiff sent Mariposa/NDC Asset Management an email notifying them of potential legal action and that Plaintiff would be contacting the Veteran Administration (V.A.) and the sheriff office to report this ongoing issue of the homeless people camping out on the property and using and selling drugs, prostitution, stealing and allowing this group to through trash everywhere on the property *(See, E-4)*.

**[16]** After the refusal of Mariposa/NDC Asset Management to clean up the property and remove all unauthorize persons from the premises, Plaintiff contacted his V.A, representative by email on May 2, 2022, who failed to use their power to compel the property management group into compliance *(See, E-5a, 5b)*.

**[17]** And on July 11, 2022, Plaintiff sent an email to Hillsborough County Code Enforcement, with photos attached and was complaining about several issues such as, black soot was coming out of all the water faucets in the apartment and the door frame and weather stripping was decaying, who then responded on July 14, 2022 *(See, E-6a, 6b, 6c, 6d, 6e)*.

[18] Then on December 26, 2022, Plaintiff sent Mariposa/NDC Asset Management an email with a video attached, showing a leaking faucet in the tub area and they told Plaintiff that the plumbers were on the way but they never came and 4 days after Plaintiff's maintenance issue complaint was sent to the property management, the plumbers surfaced but failed to resolve the problem *(See, E-7a, 76b, 7c, 7d)*.

[19] Then on February 12, 2023, Plaintiff sent Mariposa/NDC Asset Management an email with photos attached, addressing an attempted burglary incident, where a homeless couple tried to break into Plaintiff back window while Plaintiff was at home and this was due to the failure of the management group to repair the gate of the restricted area which demonstrated the refusal of the property management group to provide a safe and secure environment *(See, E-8)*.

***The Defendants refusal to terminate the lease of a destructive tenant, who violated the safety and security of other residents.***

[20] And on February 23, 2023, Plaintiff sent a chain of emails to Mariposa/NDC Asset Management and Tampa Housing Authority complaining about a variety of problems, in which most was produced by the mentally unstable tenant upstairs whose lease was eventually terminated because of his destruction of private property *(See, E-9a, E-9b, E-9c, E-9d)*.

[21] Then on May 1, 2023, Plaintiff sent Mariposa/NDC Asset Management an email with attached photos of the restricted area gate being broken into once again and a board propped up at his window possibly to break or pry the window open *(See, E-10a, E-10b)*.

[22] And on November 19, 2023, Plaintiff sent Mariposa/NDC Asset Management

an email with a video attached, which was complaining about the mental patient living upstairs, who was constantly flooding Plaintiff's apartment, yet they allowed this unsafe and unhealthy condition to exist unabated for an extended period of time *(See, E-11a, E-11b, E-11c)*.

[23] Then on December 8, 2023, Plaintiff sent Mariposa/NDC Asset Management another email with a video attached, showing that Plaintiff's apartment was being flooded by the tenant upstairs and the property management refused to correct this issue *(See, E-12)*.

[24] And the very next day on December 9, 2023, the upstairs tenant flushed something down the toilet and clogged up most of toilets in the apartments in this unit and that was the moment when the management group started to work with the upstairs tenant's sponsoring agency to terminate his lease *(See, E-13)*.

***NDC property management continuous use of unqualified and unskilled contractors to service Plaintiff's apartment complex.***

[25] Then on February 5, 2024, Plaintiff sent an email with photos attached to the Mariposa/NDC Asset Management demonstrating a dangerous and unsafe condition produced by the management group through its contractors who intentionally stacked dried and combustible material at Plaintiff's back window for retaliatory purposes to try and intimidate Plaintiff from filing complaint against them for their failure to comply with the law *(See, E-14a, E-14b, E-14c, E-14d)*.

[26] Then on February 22, 2024, Plaintiff sent an email with photos attached to the Mariposa/NDC Asset Management showing and proving that most of the of the contractors working for their business was unqualified and racist and need to be

immediately terminated because one of their service persons installed a hot water heater and left the wires exposed, thereby producing a potential fire hazard and an electrocuting situation *(See, E-15a, 15b)*. **22)**

**[27]** On June 24, 2024, Plaintiff sent an email with a video attached to the Mariposa/NDC Asset Management, complaining about an air conditioning unit problem but after 4 days without a response Plaintiff began sending a chain of emails to the Tampa Housing Authority, the V.A. and NDC headquarters, attempting to force the property management to make the repairs to the air conditioning unit *(See, E-16)*.

***Culpability of the Defendants in aiding and abetting criminal activities on NDC property.***

**[28]** Then on August 11, 2024, Plaintiff sent an email to the Mariposa/NDC Asset Management informing them to review the surveillance video for the person who was responsible for stealing a package from Plaintiff front door and they refused to comply, so on August 13, 2024, Plaintiff sent a chain of emails to the V.A. and NDC headquarters, where he failed to receive a response from either party, therefore Plaintiff sent a chain email to the Tampa Housing Authority and a high-level V.A. official but none of those persons compelled the property management to review the surveillance footage *(See, E-17a, 17b)*.

**[29]** The above-mentioned package issue occurred on August 10, 2024, when Plaintiff received a text message from Wal-Mart, informing him that a package was being delivered by the United States Postal Service at the location of 14004 Nephi Place, Apt.103, Tampa, Florida 33613, around 2:32pm, which is Plaintiff's

residence and around 3:16pm Plaintiff received an email confirming the fact that a package had been delivered at the above stated address by the U.S. Postal Service *(See, E-18)*.

[30] When the package allegedly arrived, Plaintiff was not at home at the time of the delivery, and it took him a little over an hour to arrive at his apartment but once there, Plaintiff immediately noticed that there was no package and contacted Wal-Mart, who alleged that the package would be replaced, and that they would file an escalated complaint on Plaintiff behalf with Wal-Mart management and the U.S. Postal Service.

[31] But the issue of missing packages, has been an ongoing problem, but Plaintiff never reported it to law enforcement before, simply because Wal-Mart normally gave an instant refund, but this time Wal-Mart claimed that they had to wait to determine if the carrier scanned the item properly, which meant Wal-Mart had reached its limits of replacement, which was a serious problem for Plaintiff, that needed to be resolved by the arrest of those individuals involved.

[32] So, as stated beforehand on August 11, 2024, Plaintiff sent an email to Mariposa/NDC, local property manager Annie Castro and informed her of the situation and asked her to review the surveillance footage of the day before, between the times of 2:32pm and 3:50pm, and to report the finding to the Hillsborough County Sheriff Office, in which she refused to do so and failed to respond back to Plaintiff's, email which is aiding and abetting in criminal activities *(See, E-17a)*.

***Planned conspiracy between Defendants and other entities.***

**[33]** Then on August 13, 2024, Plaintiff sent a chain of emails to one of his Veteran Administration (V.A.) counselors and NDC Vice President, and Director of Operation, James Allen and told them to review the video footage to determine what happen to Plaintiff's package but none of those persons felt the need to resolve this issue, so they are accomplices in a possible criminal enterprise and due to the fact that all videos are time sensitive and the information contained therein can be overwritten or deleted, then all these persons can also be charged with tampering with evidence and interfering with an investigation *(See, E-17a, 17b)*.

**[34]** Then on August 12, 2024, Plaintiff filed a police report by way telephone, case number *24-780199*, and in that report, the interviewing official stated that they initiated a follow up call for a deputy to be dispatched to go out and view the surveillance video, in which the investigating officer never did, thereby violating protocol since the first duty of the investigator was to gather all evidence and preserve the crime scene *(See, E-19a, 19b)*.

**[35]** And this is proof positive of a lack of interest in the case and a failure to preserve the crime scene, by refusing to review the surveillance footage immediately, since the video footage was time sensitive and the cameras on the property is supposed to be considered crucial evidence that could have easily resolve the crime and the outright refusal to interview the victim throughout the entirety of the investigation, which violates the core principle of such an investigation, which is to quickly collect all significant evidence.

**[36]** Therefore, after waiting for a few days for someone to contact Plaintiff concerning the case and never receiving any type of response from HCSO, NDC, Wal-Mart or the USPS, Plaintiff decided on August 15, 2024, to file a hotline

9

complaint with the USPS, Office of Inspector General (OIG), where Plaintiff gave three possible scenarios of how the package might have been stolen and they are as follows: (1) the carrier stole the package, which is what happen; (2) it was delivered to the wrong location; (3) the package was stolen from Plaintiff's front door.

**[37]** And on August 16, 2024, Plaintiff received an email from the USPS OIG, where they claimed that after careful review of his complaint, they determined that the USPS Consumer and Industry Contact Office (CICO), was the proper agency to handle Plaintiff's concerns and that they were forwarding that information to the local consumer affairs office, who never contacted Plaintiff with a resolution for the problem *(See, E-20a, 20b)*.

**[38]** This issue was a serious dilemma because there were two different USPS agencies investigating the missing package and neither was able to locate the whereabouts of such, but according to tracking number 9261290189160118387448 results, the package was shipped from Davenport, Florida on August 8, 2024, at 6:58pm, and arrived in Tampa, Florida on August 10, 2024, at 5:13am and was out for delivery on August 10, 2024, at 6:39am and then on August 30, 2024, at 3:12pm the package status was being labelled as unclaimed and being returned to sender *(See, E-21a, 21b, 21c,)*.

**[39]** There are several problems with the above information, such as: (1) why wasn't USPS OIG, or USPS CICO able to locate the package that was supposedly being retained by a Tampa, Florida post office? (2) Why are there no tracking activities of the package between the time frame of August 10, 2024 and August 30, 2024? (3) Why was the package being sent to Shepherdsville, Kentucky, when

it originated from Davenport, Florida?

**[40]** The simple solution to this seemingly complexity of a problem, is that the U.S. mail carrier on August 10, 2024, stole the package and due to Plaintiff pressing the issue for an investigation from multiple entities, the USPS was forced to take several criminal actions to try and cover up this reality, by first falsifying and fabricating government documents in an attempt to make it appear that the package was in a Tampa, Florida post office, all the while unclaimed but in reality, it was in the possession of the postal carrier, and the USPS confiscated the package and shipped it to the above location.

### *The failure of the Defendants to cooperate with a sheriff department's investigation.*

**[41]** In the August 15, 2024, complaint filed with the USPS OIG, Plaintiff stated in the complaint that there was surveillance footage available, and provided the contact information for the property management where the video was located and further stated that he had sent an email to the local property manager on August 11, 2024, asking them to review the surveillance video to determine the perpetrator(s) of the missing package and to report their findings to the HCSO, which they refused to do so, and their action constituted the crimes of tampering with evidence and interfering with an investigation.

**[42]** And further Plaintiff informed the USPS OIG, that on August 13, 2024, Plaintiff sent a chain of emails to his V.A. counselor and the property manager's headquarters requesting that they review the apartment's video footage, and they also refused to comply, which lead to an elementary conclusion, which is, that the USPS either bribed or threatened those persons to ignore the video contents, and

the discovery process will easily manifest this information.

**[43]** So, a criminal conspiracy was in progress and all the parties involved may not know the overall objective, but they do all understand that their conduct is in violation of some type of law.

**[44]** First, if the package was returned to a Tampa, Florida post office on August 10, 2024, for the reason of being undeliverable, then that action should have been reflected on the tracking results and a redelivery notice (PS form 3849) should have been issued to Plaintiff and filed into USPS data system but there is no such record in existence and Wal-Mart sent Plaintiff an email on August 10, 2024, at 3:16pm, informing him that the package was scanned and delivered, and that particular delivery confirmation is part of Wal-Mart and USPS records *(See, E-18)*.

**[45]** And the reason for the USPS sending the package to Shepherdsville, Kentucky is because Wal-Mart instructed them to forward the package to that location, which is the only logical explanation, since the package originated from Davenport, Florida and that was the only available return address for the USPS to utilize, therefore this appear to be a criminal conspiracy in effect, conducted by Wal-Mart, USPS, and NDC officials *(See, E-21a, 21b, 21c)*.

**[46]** When all the above stated entities failed to resolve the missing package issue Plaintiff sent a certified complaint to the USPS Criminal Investigation Service Center (USPS/CISC) on September 25, 2024, *(See E-30)*.

**[47]** And on October 8, 2024, Plaintiff received a falsified email from that agency claiming to be entering the reported information into a national fraud complaint system and provided a reference number and further stated that if additional

information was needed that they would contact Plaintiff directly but failed to do so or resolve the issue *(See E-31)*.

### *Defendant's scheme to fabricate documents and video to conceal criminal conduct.*

[48] Therefore, due to the refusal of HCSO to investigate a possible criminal enterprise, masquerading as property management who willfully and intentionally concealed evidence by refusing to allow the surveillance video to be viewed and then failing to cooperate with an ongoing investigation thereby committing the crimes of aiding and abetting criminal activities, tampering with evidence and obstruction of an officer of the law who had been assigned the responsibility of resolving a public nuisance that caused an inconvenience to the residents of the crime scene property.

[49] Officer Alejandro Albiter claimed that he was assigned the task of gathering the video surveillance from the property leasing office and that another deputy was on scene that provided him with the property manager's contact information yet, officer Albiter refused to immediately go out to the extended crime scene (leasing office) to review the video footage but decided to send an email to the property manager who refused to respond to such and then officer Albiter purposefully allowed the elapse of a month before another officer was physically dispatched to the same location to review surveillance footage that probably had already been overwritten or deleted, at that time *(See, E-22)*.

[50] According to the incident report on September 5, 2024, around 10:55am officer Jennifer Kranzel was dispatched to Manchester Apartment leasing office, located at 5126 N. Habana Avenue, Apt. 103, for the stated reason of a follow up

to a theft call of service *(See, E -23)*.

**[51]** In officer Kranzel report it appears to demonstrate several illogical and inconsistent statement concerning her investigation and they are as follows: *(1) Officer Kranzel alleged that the property manager (Annie Castro) related to her that she watched the video surveillance from the time frame of August 10, 2024, between the hours of 2:30pm through 3:40pm.*

**[52]** First, Plaintiff sent the property manager an email on August 11, 2024, asking her to review the surveillance footage immediately for a package theft incident and then report it to the HCSO, which she refused to do so *(See, E-2)*.

**[53]** And further Mariposa/NDC property manager, Annie Castro, failed to respond to officer Albiter's email request, to review the surveillance footage for almost one month and only complied once an officer was directly sent to the property at which time the original video footage probably had been deleted or overwritten due to limited storage space, that is, based on Mariposa/NDC property manager's statement in the incident report, that the system was out dated *(See, E-23)*.

**[54]** In the statement from officer Kranzel's investigative report, she alleged that she reviewed the video surveillance on September 5, 2024, between the hours of 2:30pm until 3:40pm, and saw no activity but according to the emails Plaintiff sent to the V.A., the local and headquarters property management group, informing them of the time frame that the package was stolen and the time that Plaintiff arrival at home, which was between the hours of 2:32pm and 3:50pm, which means that officer Kranzel viewing time of the video is lacking ten minutes *(See, E-23)*.

14

[55] And if officer Kranzel actually viewed the video surveillance and claimed that there was no activity, then explain how and why Wal-Mart would send Plaintiff a second message on August 10, 2024, at 3:16pm notifying him that a package had been delivered to his address and this process requires that the U.S. Postal Carrier scanned the item and sent it to Wal-Mart and the USPS as proof of delivery and location, which means the postal officials was on the property between the hours of 2:32pm and 3:50pm *(See E-18)*.

[56] Therefore, the video that officer Kranzel alleged that was reviewed between her and property manager, Annie Castro was clearly fabricated because the above stated document prove that the package was scanned at Plaintiff location and plus the U.S. postal official delivered regular mail also, because when Plaintiff returned home he had mail in his box, which was not there when Plaintiff left.

[57] So, if officer Kranzel did not see the postal carrier placing mail in all the boxes or see Plaintiff arriving on the scene and there is nothing in officer Kranzel's incident report that indicate that she observed Plaintiff or the postal carrier present in the video, then it is safe to assume this is a criminal conspiracy and the fabrication of evidence *(See, E-23)*.

***Conspiracy between NDC Property Management and HCSO.***

[58] The following information was provided in the police report: *(2) Officer Kranzel further stated that the property manager provided her with her personal cell phone with the surveillance footage.*

[59] This was supposed to be an investigation concerning video footage of a crime, therefore, any type of transfer of this information to personal devices undermines

15

the integrity of the evidence because the time stamp could easily be edited and officer Kranzel should have been aware of this fact, but this seems to be a criminal conspiracy in effect to conceal the identity of the perpetrator of the crime for legal purposes.

[60] And even more alarming is the fact that Plaintiff sent emails to the property manager, the property management home office and the veteran administration requesting that they review the surveillance video to assist in solving a crime in progress, but they all failed to comply and finally, they even refused to respond to an investigating officer's request for evidence, which is aiding and abetting in criminal activities, tampering with evidence and interfering with an investigation and none of the involved officers even attempted to charge any of the culprits with those crimes.

[61] Further officer Kranzel arrived at the leasing office to review a video on a personal device, where an operational surveillance system was in place with monitoring devices available, consequently why would an investigating officer waste their time reviewing personal devices when the video could easily be altered, instead of utilizing the original source for a more accurate time stamp and more control over the video contents.

[62] The third and final statement from the investigating officer is as follows: (3) *Officer Kranzel alleged that the property manager related to her that she was unable to send the video as the system was old and the file was too big to send.*

[63] Officer Kranzel alleged that she made a video of the contents of the surveillance footage by utilizing an agency issued iPhone and later impounded them as evidence at the district 3 office *(See, E-23)*.

16

[64] The above statement demonstrates defective thinking because first the investigating officer should never rely on contaminated evidence coming from personal devices, especially when the original surveillance and monitoring system is available.

[65] And secondly, officer Kranzel alleged that the property manager told her that the reason for not sending the video to officer Albiter was because the system was old and the file was too large to send, but the property manager failed to explain why she didn't just respond to officer Albiter's investigative request for information, that is, if the said reasons were legitimate.

[66] And thirdly officer Kranzel claimed that she uploaded or downloaded the video footage to her agency issued iPhone but at the same time asserting that the property manager told her the file was too large to send to officer Albiter's agency issued iPhone, which meant, it was either of a different type or the property manager was not telling the truth about the size of the video file, so it appears that this was a coordinated effort to conceal a simple matter *(See, E-23)*.

### *NDC falsify documents and alleged inaccurate claims against Plaintiff.*

[67] Then on August 30, 2024, Plaintiff sent a chain of emails with a video attached to Mariposa/NDC Asset Management officials, Tampa Housing Authority, and two V.A. officials, concerning a plumbing issue originating from the upstairs apartment, which was flooding Plaintiff's apartment and has been a reoccurring problem for years but none of the afore-stated persons or entities attempted to resolve the problem.

[68] The property management group (Mariposa/NDC) called Plaintiff and told

17

him a few days after the incident was reported that the plumbers were coming out
to check for leaks in both, Plaintiff's and the upstairs apartment, but the excessive
amount of water that flooded Plaintiff's apartment was not a plumbing leak but
rather a bathtub drainage pipe issue and Plaintiff stated that to the property
management, but they refused his assessment of the situation and demanded entry
into his apartment to examine the plumbing but there was no access to the water
pipe from Plaintiff's apartment unless the ceiling was removed *(See, E-24a, 24b)*.

**[69]** On September 17, 2024, the Florida Department of Agriculture and Consumer
Services (FDACS), received Plaintiff's complaint by certified mail *(See E-25a,
25b)*.

**[70]** Then on September 30, 2024, Plaintiff received an email from FDACS
asserting that they had in their possession the official complaint and were mailing a
copy to Mariposa/NDC asking them to review and respond to Plaintiff's concerns
within 30 days *(See E-26a, 26b)*.

**[71]** And further on September 30, 2024, NDC responded to FDACS notification
by fabricating a document which made all kind of false allegations, such as, **(1)**
they were in good standing with state and local agencies and were working to
remedy any issues that may arise; **(2)** Plaintiff's unit was inspected on multiple
occasions during the course of local agency audits as well as code enforcement
requests made by Plaintiff and each time any issues were addressed in a timely
manner; **(3)** and NDC have multiple instances where Plaintiff has demanded that
there were issues in the unit and when inspected to determine what was the best
course of action, NDC were unable to see or replicate the issues that Plaintiff was
adamantly stating were present *(See E-27a, 27b)*.

18

[72] The above stated allegations by NDC show and prove the intentional and willfulness to violate laws without fear of any real repercussions because NDC is not in good standing with any government agency and can't and didn't produce any proof to show otherwise *(See E-2e, 2f)*.

[73] And the countless number of complaints filed by Plaintiff with code enforcement over the years, which can be easily accessed on their website, will support that fact and neither NDC nor code enforcement can produce evidence that Plaintiff ever filed a false report.

[74] And secondly NDC asserted that Plaintiff's unit was inspected on multiple occasions by the local auditing agency and code enforcement and the problems were rectified in a timely manner *(See E-27b)*.

[75] But Plaintiff have provided the Court and other government entities with numerous exhibits demonstrating otherwise, which shows a constant failure to correct the problems, respond in a timely manner, stop the repetitiveness of the issues and respond to the requested matters without being forced to do so by other agencies *(See E-2e,2f)* and *(See 6a, 6b, 6c, 6d)*.

[76] Then thirdly NDC asserted that Plaintiff in multiple instances demanded that there were issues in the unit but when inspected by NDC was unable to find or see those problems *(See E-27b)*.

[77] Yet, NDC cannot produce any documentation to prove that Plaintiff ever filed a false complaint with any government agency, nor can they produce any evidence that shows that Plaintiff has sent NDC or its affiliates any information that was not true and correct and to prove the fallaciousness of NDC assertions is the fact that

every line of communication between Plaintiff and NDC was done through text messages or emails, which produce a verifiable paper trail that does not manifest multiple instances where Plaintiff demanded maintenance issues in his unit that did not exist.

[78] And on October 28, 2024, Plaintiff received an email from FDACS, which contained the reply from NDC and in that email FDACS was stating that the informal mediation effort was completed, and that the complaint was closed and that if Plaintiff was not satisfied with the results he could respond within 30 days *(See E-28).*

[79] So, on November 9, 2024, Plaintiff sent an email to FDACS outlining all of the defects in the NDC argument, but FDACS stated that they did not have authority to compel settlement or provide legal services but alluded to the fact that most landlord and tenant disputes can only be resolved in a civil court, therefore Plaintiff complied with that information *(See E-29).*

***USPS purposely interfered with Plaintiff's mail.***

[80] After all the afore stated parties failed or refused to take the proper course of action Plaintiff filed a lawsuit case number *25-CA-001527*, into the Hillsborough County Circuit Court on February 24, 2025, and was forced by the Court to reissue the summons and complaint on May 28, 2025, where Plaintiff sent those documents by way of U.S. certified mail with a return receipt to the Defendants.

[81] Then on June 2, 2025, the summons and complaint were delivered to the Defendants *(See E-32)*, but the postal worker intentionally gave the receiving party *(a law firm)* the return receipt without having them to sign or date it, and wantonly

left that document in their possession *(See E-33)*.

**[82]** And on June 13, 2025, Plaintiff received a certified letter with a return receipt from that same party *(a law firm)* which contained a copy of the certified envelop that Plaintiff had sent to them and a copy of his return receipt unsigned or dated and the postal worker placed that letter into Plaintiff's mail box without having him to sign for the recipient return receipt mail *(See E-34)*.

**[83]** So, it appears that the U.S. Postal Service is involved in a conspiracy to interfere with Plaintiff's lawsuit knowing that they are a major contributor to some of the key issues in Plaintiff's complaint and at a certain point will become a Defendant on the federal level.

**[84]** Also on June 6, 2025, Plaintiff filed a missing mail complaint with USPS, due to the reason of not being able to track the certified return receipt and in turn received an email response on the same day from USPS, informing him that someone would contact Plaintiff within three business days concerning his issue.

**[85]** And on June 9, 2025, Plaintiff received an email claiming that the item was still enroute to the destination for the return receipt, in which Plaintiff would be assuming the item here means, the certified mail, which was delivered on June 2, 2025, therefore, this email is a falsification and fabrication of government documents *(See E-35)*.

**[86]** The fact is that the return receipt was never scanned due to it being left in the possession of the recipient intentionally and then having the recipient sent that same information back to Plaintiff via certified mail with their return receipt while at the same time claiming insufficiency of process and this certified mail being left

in Plaintiff's mailbox to attempt to justify the illegal interference of his civil action by USPS *(See E-33,34)*.

 [87] When Plaintiff did not receive corrective actions from USPS branches and divisions, he filed complaints with the USPS Consumer Advocate Office and the USPS Chief Counsel, on June 21, 2025, but did not get any kind of response from either of those agencies and therefore it appears that USPS is unanimous in allowing the violations to continue *(See E-36,37)*.

[88] The USPS has violated Plaintiff's rights and privileges on many occasions too numerous to mention but to suffice to say, in the cover up of the criminality that occurred on August 10, 2024, USPS intentionally interfered with Plaintiff's certified mail again in another pending lawsuit on July 24, 2025, where USPS falsely alleged that it was left with an individual at the intended destination but failed to provide proof of service *(See E-38)*.

[89] Then on July 24, 2025, the return receipt was delivered to an unaddressed and unknown parcel locker in Miami, Florida, where the carrier failed to scan the item once again and thereby denying Plaintiff proof of service to provide to the Court and purposefully interfering with his legal action *(See E-39)*.

[90] The Hillsborough County Circuit Court dismissed Plaintiff's civil action, case number *25-CA-001527*, on August 11, 2025, for insufficiency of process, insufficiency of service of process and lack of personal jurisdiction, thereby aiding and abetting criminals in illegal activities and denying Plaintiff due process.

*CAUSE OF ACTION - ONE – FRAUD*

**[91]** The Defendants refused to properly respond or resolve Plaintiff's reported maintenance issues in a timely manner, thereby violating laws by receiving government funds from Tampa Housing Authority, yet at the same time allowing the property to remain in a dilapidated condition *(See All Email Exhibits)*.

**[92]** On August 10, 2024, Wal-Mart sent Plaintiff an email notifying him of a package delivery *(See E-18)*, and on August 11, 2024, Plaintiff sent an email to Annie Castro telling her that Plaintiff's package was stolen and if she could review the surveillance video to determine the perpetrator of the crime but Mrs. Castro refused to comply and thereby aiding and abetting criminal activities on the property and scamming Wal-Mart of its goods and services *(See E-17a)*.

**[93]** Due to the refusal of Annie Castro to review the surveillance footage Plaintiff was forced to send a chain of emails to James Allen, Tampa Housing Authority (THA) and the Veteran Administration (V.A.) but all those officials allowed and assisted the local property manager in committing fraud against Wal-Mart due to the fact that they had to replace the contents of the package and this included James Allen, who is the Vice President, Director of Operations.

**[94]** Then on August 12, 2024, Plaintiff filed a police report with the Sheriff Office and an investigator was assigned to the case who contacted Annie Castro by way of email instead of going directly to the management property to review the video footage, and Mrs. Castro refused to contact the investigator to provide the necessary evidence to help in the arrest of the criminal(s), for over a month but instead conceal evidence, interfered in an investigation and tampered with evidence *(See E-22)*.

[95] And on September 5, 2024, another investigating officer went out to the property management leasing office, located at 5126 N Habana Avenue, Apt # 103, Tampa, Florida 33614, after Mrs. Castro refused to provide the initial investigating officer with the information or evidence that he was requesting and this second investigator claimed that they reviewed the surveillance video on Mrs. Castro personal device instead of examining it on the business official monitoring system, which means the video was purposedly and intentionally altered to fit Mrs. Castro narrative *(See E-23)*.

[96] Then Annie Castro told the second investigating officer that the reason why she did not send the surveillance video to the initial investigating officer is because the system was old, which means, it had limited storage space and she said that the files were to big, yet the second investigating officer asserted that she loaded a copy of the surveillance footage onto her agency issued iPhone and later impounded them at the sheriff district office and this prove that Mrs. Castro fabricated a video, interfered with an investigation and concealed evidence.

[97] On September 17, 2024, Plaintiff sent a complaint to Florida Department of Agriculture and Consumer Services (FDACS), concerning the property violations of Mariposa/NDC Management and on September 30, 2024, Plaintiff received an email from FDACS claiming that they were investigating those allegations, which proves Plaintiff's complaints were legitimate *(See E26a, 26b),* and then on that same day James Allen sent FDACS a fabricated document in response to Plaintiff's allegations *(See E-27a, 27b)*.

[98] In James Allen's response, he claimed that they were in good standing with local and state agencies but failed to produce one document to prove such, but

Plaintiff had an inspection from a THA contractor named CGI Federal Inc., on December 29, 2021, which occurs every two years and the NDC Property Management failed that inspection twice, but Plaintiff told the inspector to go ahead pass the second inspection and that Plaintiff would get code enforcement to correct the problem *(See E-2e, 2f)*.

[99] Then James Allen asserted that Plaintiff apartment was inspected on multiple occasions by local agencies as well as code enforcement, as an alleged request made by Plaintiff and each time the issues were addressed in a timely manner and this statement show and proves the intentional and willfulness to fabricate documents without fear of repercussion *(See E-2e, 2f,)* and *(See E- 6a, 6b, 6c, 6d)*.

[100] And finally, James Allen insinuated that Plaintiff were making a lot of false maintenance reports, thereby causing NDC Property Management to use and lose valuable time and resources, without producing any type of evidence to support that claim and by so doing was providing misleading and false information to a state investigating government agency *(See E-27b) and (See all exhibits)*.

[101] Before Plaintiff contacted the property management concerning his stolen package he immediately notified Wal-Mart of the situation on August 10, 2024, and they claimed that the issue would be escalated but instead of resolving the matter they conspired with the U.S. Postal Service and fabricated a tracking document showing that the package was returned to the sender which was not the point of origins of the item *(See E-21a, 21b, 21c)*.

[102] Then on August 15, 2024, Plaintiff filed a hotline complaint with the USPS Inspector General Office (OIG), and they sent Plaintiff a falsified email asserting

that after careful review they determined that the USPS Consumer and Industry Contact Office was the proper agency to resolve the matter and was forwarding the information to the local Consumer Affairs Office who failed to contact Plaintiff or solve the problem *(See E-20a, 20b)*,

[103] And further Plaintiff sent a certified complaint to the USPS Criminal Investigation Service Center on September 25, 2024, and received an fabricated government email claiming to be entering Plaintiff's complaint information into their fraud system and that if further evidence was needed they would contact Plaintiff directly but instead ended the investigation and refused to notify Plaintiff of the conclusive results *(See E-30,31)*.

## CAUSE OF ACTION -TWO – CONSPIRACY

[104] Annie Castro and James Allen worker together for years to avoid making the necessary maintenance repairs and provide a safe and secure environment for the residents at Manchester apartment complex *(See E-1a, 1b)* and *(See E- 2a, 2b, 2c, 2d, 2e, 2f)* and *(See E-3a, 3b, 3c, 3d, 3e)*.

[105] On April 13, 2022, Plaintiff notified Mariposa/NDC Property Management group that future legal action would be taken against them and that Plaintiff would also contact the V.A. and the Sheriff Department concerning the squatter's problem, the use and sale of illegal drugs on the property and the burglary attempts but the property management refused to comply and on May 2, 2022, Plaintiff contacted a V.A. official who referred the matter to another V.A. official and all the above stated  persons and entities conspired to allow the criminal activities to continue without interruption. *(See E-4, 5a, 5b, 8, 10a, 10b)*.

[106] On June 24, 2024, Plaintiff sent an email to Annie Castro complaining about a malfunctioning air condition unit, which should have been immediately resolved but the property manager allowed several days to elapse without a response, so on June 28, 2024, Plaintiff sent a chain of emails to THA, the V.A., and James Allen, informing Mr. Allen once again of potential legal action but NDC Property Management officials conspired to intentionally ignore the maintenance issues complaint and delayed services for retaliatory reasons *(See E-16)*.

[107] Wal-Mart sent Plaintiff an email dated August 10, 2024, notifying him that his package had arrived, but Plaintiff was not at home at that time and once he arrived at his residence, Plaintiff noticed the package was missing and immediately contacted Wal-Mart, who in turn notified and conspired with the U.S. Postal Service *(See E-18)*.

[108] Then on August 11, 2024, Plaintiff sent an email to Annie Castro and told her that Plaintiff's package was stolen and if she could review the surveillance video and report such findings to the Sherriff Office to determine who the culprit of that crime was, but Mrs. Castro refused to comply, thereby conspiring to aid and abet criminals in committing security breaches on their property *(See E-17a)*.

[109] After the failure of Annie Castro to review the security video Plaintiff sent a chain of emails to the V.A. and the THA officials, and James Allen to inform them of the misconduct of the local property manager and to request that they encourage the prompt examination of the reported issue, but they all plotted and no investigation was conducted *(See E-17a, 17b)*.

[110] So, all the involved persons and entities conspired to cover up the misdeeds of a postal worker who stole Plaintiff's package according to the USPS

tracking, which showed the package being returned to Shepherdsville, KY but in reality it originated from Davenport, FL and the package did not require a signature, which meant it was a drop off delivery and there was no need for the postal person to take the package back to the post office *(See E-21a, 21b, 21c)*.

[111] Plaintiff filed a police report with the HCSO on August 12, 2024, and gave the time and details of the theft incident and the investigating officer allegedly came out to the crime scene and met with another deputy who was also present and gave him the contact information for Annie Castro and that investigating officer claimed he email the property manager and requested the surveillance video, which demonstrated a conspiracy between the U.S. Postal Service, Sheriff Office, Annie Castro and James Allen because an investigator does not wait a month for some one to email them a copy of a security video *(See E-22)*.

[112] Then on September 5, 2024, a second HCSO investigator was sent to the local leasing office to review the surveillance footage, almost a month later, where the original video probably had already been deleted or overwritten, and this was most likely the reason for the delay in releasing the video footage.

[113] But Annie Castro told the second investigator the reason that she did not send the video to the first investigator's service phone was because the system was old, and the file was too large, but the second investigator was able to download or upload the same video to her service phone and this proves a conspiracy between multiple persons and agencies *(See E-23)*.

[114] Due to the constant failure of NDC Property Management to correct the maintenance issues in a timely manner, Plaintiff sent a complaint to Florida Department of Agriculture and Consumer Services (FDACS), on September 9,

2024, *(See E-25a)*, and on September 30, 2024, the FDACS responded and gave NDC Property Management 30 days to reply to Plaintiff's complaint *(See E-26a, 26b)*.

**[115]** And on September 30, 2024, James Allen  conspired with other officials at NDC to send a false and fabricated document to a government agency making all kinds of assertion that they could not prove, such as, NDC was in good standing with state and local regulatory agencies or all of the requested repairs was addressed in a timely manner or Plaintiff was filing false maintenance reports and none of those claims were proven or any evidence provided to support such *(See E-27a, 27b)*.

**[116]** Wal-Mart and the USPS conspired to cover up the criminal action of a USPS carrier who Plaintiff believed stole his package on August 10, 2024, after he had received a text and email message from Wal-Mart asserting that the package was delivered to Plaintiff's address *(See E-3)*.

**[117]** Plaintiff filed a complaint with the USPS Office of Inspector General (OIG) concerning his missing package on August 15, 2024, where they refused to investigate the issue and conspire with the USPS Consumer and Industry Contact Office (CICO) to conceal the acquired information obtained during the evidence gathering process *(See E-20a,20b)*.

**[118]** On September 25, 2024, Plaintiff sent a complaint to the USPS Criminal Investigation Service Center (CISC) via USPS certified mail concerning the matter of the failure of the USPS divisions and departments to resolve Plaintiff's stolen package issue and on October 8, 2024, Plaintiff received an email from CISC conspiring with other USPS divisions attempting to hinder Plaintiff from obtaining

an in-depth investigation *(See E-30,31)*.

**[119]** After all efforts failed in resolving Plaintiff's stole package, a lawsuit was filed case number *25-CA-001527*, where Plaintiff sent documents via USPS certified mail with a return receipt and on June 2, 2025, those documents were delivered but the postal worker conspired with the recipient by failing to have them sign and date the return receipt and gave them possession of such and thereby intentionally interfered with Plaintiff's civil action, in which USPS is an intricate part of *(See E-32,33)*.

## CAUSE OF ACTION -THREE - NEGLIGENCE

**[120]** For years Plaintiff has been encouraging NDC Property Management to make timely and necessary maintenance repairs and provide a safe and secure living environment, only to repeat this failed process, so on March 9, 2021, Plaintiff sent an email with photos attached, to James Allen demonstrating all of the code violations in Plaintiff unit but this information was ignored, thereby failing to perform his obligatory duty to first the tenant, the funding agencies and the regulatory agencies *(See E-1a, 1b 2a, 2b, 2c, 2d, 2e, 2f, 3a, 3b, 3c, 3d, 3e, 4, 5a, 5b, 6a, 6b, 6c, 6d.7a, 7b, 7c, 7d)*.

**[121]** Then on February 12, 2023, Plaintiff sent Annie Castro an email complaining about a continuous security issue, which was squatters breaking into the complex restricted area and trying to burglarize the apartments but the property management failed to force the Sheriff Department to secure the property or take criminal actions against the violators *(See E-1b, 3a, 3b, 3c, 3d, 3e, 4, 5a, 5b, 8, 10a, 10b)*.

[122] Plaintiff sent Annie Castro an email with a video attached dated November 19, 2023, concerning an ongoing plumbing problem that NDC failed to correct and allowed this issue to persist for years causing great damages to Plaintiff's property and health *(See E-7a, 7b, 7c, 7d, 9a, 9b, 11a,11b, 12, 13)*.

[123] On February 5, 2024, the Defendants intentionally and maliciously produced an unsafe and hazardous condition by utilizing a racist contractor, who purposely gathered dry fallen tree limbs and placed them directly on and under Plaintiff's back window, thereby causing a potential fire danger, for the express reason of intimidation and retaliation for Plaintiff continuous efforts to force the property management to make the necessary repairs, which is a failure in duty to provide a safe and secure environment *(See E-14a, 14b, 14c, 14d)*.

[124] Then on February 22, 2024, NDC Property Management received an email from Plaintiff complaining about an unskilled and unqualified plumber contractor, who caused all kinds of damages to the apartment unit and improperly installed a hot water heater by intentionally leaving the electrical wires exposed, under the believed instructions of the property management, which is negligence and the disregard for life *(See E-15a, 15b)*.

[125] Plaintiff then sent an email dated June 24, 2024, to Annie Castro requesting a repair of his air conditioning unit, which the property manager failed to comply with, so on June 28, 2024, four days later without a properly functioning air conditioning unit, Plaintiff sent a chain of emails to the V.A., the THA and James Allen, who all were negligent of duty by not immediately responding to an emergency situation *(See E-16)*.

31

[126] On August 10, 2024, Wal-Mart sent Plaintiff an email notifying him that a package had been delivered but Plaintiff was not at home at that time but once he arrived Plaintiff noticed the package was missing and immediately contacted Wal-Mart and they in returned communicated with the U.S. Postal Services, who had delivered the item. Then Plaintiff sent Annie Castro an email dated August 11, 2024, asking her to review the surveillance video to discover the perpetrator of this crime but Mrs. Castro refused to act in accordance, which is a failure in duty to secure the property *(See E-17a)*.

[127] After the refusal of Annie Castro to review the security video Plaintiff sent a chain of email on August 13, 2024, to the following persons: Akeela Hawkins, James Allen, Ladawn Gibson and Harry McCurdy and all of those individuals failed to force Annie Castro to review the surveillance footage and to help to solve a crime in progress but instead allowed a security breach to be committed on the managed property, thereby demonstrating negligence of duty *(See E-17a, 17b)*.

[128] On September 9, 2024, Plaintiff sent a complaint against NDC Property Management by way of U.S. certified mail to Florida Department of Agriculture and Consumer Services (FDACS), *(See E-25a)*, and on September 30, 2024, Plaintiff received a response from said agency giving the Defendants 30 days to reply to the complaint *(See E-26a)*.

[129] And on September 30, 2024, James Allen sent a reply to FDACS making false claims that NDC failed to produce any documentation to support such a claim, and in return was committing fraud against a government entity and failed to live up to the standards required by law in maintaining rental property *(See E-27a, 27b)*.

[130] Due to Wal-Mart and the USPS failure to immediately rectify the stolen package problem on August 10, 2024, their action caused severe mental and physical injury to Plaintiff and forced him to spend tremendous time and effort litigating the issue and thereby denied him quality time with himself and family, which is a failure in their duties and responsibilities in providing a safe and secure environment to conduct business .

[131] After Plaintiff reported the stolen package issue to the property management, Sheriff Department, Wal-Mart and USPS that occurred on August 10, 2024, and not receiving a response, Plaintiff then filed a related hotline complaint with the USPS OIG on August 15, 2024, who failed to perform their required duty to investigate criminal activities *(See E-20a,20b)*.

[132] Plaintiff basically exhausted all of his remedies with USPS divisions and on September 25, 2024, Plaintiff sent a complaint to USPS CISC by way of USPS certified mail and on October 8, 2024, he received a response from CISC who in turn refused to comply with their obligations to complete the process of acquiring further evidence to resolve the issues of the complaint *(See E- 30,31)*.

## CAUSE OF ACTION – FOUR – RACE DISCRIMINATION

[133] For years Plaintiff have been encouraging NDC Asset Management to make the necessary maintenance repairs and to provide a safe and secure environment to live in but due to the lack of respect for black tenants they allowed homeless persons to become squatters on the property, break into apartments, use and sale drugs and though trash all over the property *(See E-1a,1b,3a,3b,3c,3d,3e)*.

[134] Due to the continuous slumlord violations, Plaintiff notified NDC

management on April 13, 2022, in an email that a potential lawsuit would be filed if the afore stated issues were not resolved and Plaintiff further stated that he would contact the Code Enforcement, the Veteran Administration, the Sheriff Department and the Tampa Housing Authority, but NDC failed to comply because they believed that none of the above mentioned entities would support a black tenant rental rights *(See E-4,5a5b)*.

[135] On February 5, 2024, NDC sent contractors to Plaintiff's apartment complex to remove trash and debris that Plaintiff had filed a complaint with the V.A., the Tampa Housing Authority and Code Enforcement to request them to compel NDC to perform that service, and out of retaliatory and racial motivations, NDC instructed the contractors to stack the dry debris at Plaintiff's back window and thereby producing a fire hazard, and intentionally endangering his life *(See E-14a,14b,14c,14d)*.

[136] Plaintiff had made several complaints to NDC about the squatters who were committing all types of crimes on the property, but nothing was done to rectify the problem and on August 10, 2024, Wal-Mart notified Plaintiff that a package was delivered to his residence but once Plaintiff arrived at his apartment the item was missing and he immediately contacted the property manager and asked them to review the surveillance video, in which they refused to comply out of racial contempt for black tenants and for retaliatory purposes *(See E-17a,17b,18)*.

[137] In the August 10, 2024, incident where Plaintiff's package was stolen, Wal-Mart and USPS purposely covered up the fact that a USPS carrier had possibly committed the crime but due to their lack of respect for and disdain of black people, they aided and abetted the perpetrator and fabricated a government issued

34

document to try and justify the returning of the package to the sender *(See E-21a,21b,21c)*.

**[138]** Plaintiff report the missing package issue to USPS OIG on August 15, 2024, and received an email from that office on August 16, 2024, claiming to have reviewed the evidence and determined that USPS CICO was the appropriate agency to handle the complaint and that he was forwarding the information to the local Consumer Affairs Office and both of these agency along with Wal-Mart out of racial prejudice failed to resolve the problem *(See E-20a,20b)*.

*CAUSE OF ACTION – FIVE – NUISANCE / BREACH OF CONTRACT*

**[139]** On March 9, 2021, Plaintiff sent NDC management photos of a horrid condition produced by homeless people living in the restricted area of the complex who threw all kinds of trash and debris all over the property and were fighting, using and selling drugs and attempting to burglarize the apartments and thereby producing a nuisance and violating Plaintiff's quiet enjoyment and security and this issue continued unabetted for years *(See E-1a,1b,3a,3b,3c,3d,3e)*.

**[140]** Then on April 13, 2022, Plaintiff sent an email to NDC management notifying them of a potential lawsuit and contacted the V.A. and the Sheriff Office concerning the ongoing homeless squatters problem, and the threats against the tenants by those persons, prostitution, drug selling, stealing of personal property and a whole host of other violations but all entities that Plaintiff contacted failed to correct the problem, which is a breach of contract because this is government funded housing *(See E-4,5a,5b)*.

**[141]** Plaintiff sent an email with attached photos to NDC management on

35

February 12, 2023, complaining about a burglary incident involving the homeless squatters, who tried to break into his back window due to the failure of NDC management to repair the gate of the complex restricted area which gave them access to back entrance of the property that was used for living quarters *(See E-8)*.

**[142]** And on February 5, 2024, Plaintiff sent an email with attached photos showing a dangerous and unsafe condition produced by contractors hired by NDC management to intentionally harass and threaten Plaintiff out of retaliation for him filing maintenance complaints by those persons stacking dried and combustible material at Plaintiff's back window and thereby causing a fire hazard *(See E-14a,14b,14c,14d)*.

**[143]** Then Plaintiff sent NDC management an email with photos attached on February 22, 2024, showing and proving that most of the contractors used by the property management were not qualified and were racist because the service person installed a hot water heater and purposely left the wires exposed and thereby producing a potential fire hazard or an electrocution situation *(See E-15a,15b)*.

**[144]**  On June 24, 2024, Plaintiff sent an email complaint with a video attached to NDC management relating to an air conditioning problem, which has been continuing up until the present time but after four days without any response in the middle of summer, Plaintiff sent a chain of emails to NDC headquarters, the V.A., and Tampa Housing Authority attempting to force the property management to make the necessary repairs to the air conditioning unit *(See E-16)*.

**[145]** And on August 11, 2024, Plaintiff sent NDC management an email informing them to review the surveillance video to determine the person who stole

Plaintiff's package, but they refused to comply, and Plaintiff sent a chain of emails to the V.A., the Tampa Housing Authority and the NDC headquarters, yet all the contacted entities failed to use their authority to compel the local property management to release the identity of the perpetrator of the crime, which is promoting an unsecured and unsafe living environment *(See E-17a,17b)*.

## **PRAYERS FOR RELIEF**

Wherefore, Plaintiff prays for a judgment as follows:

**[146]** For general, specific, compensatory, incidental and consequential damages according to proof at trial, but in an amount not less than 400,000

**[147]** That the Court grant Plaintiff compensatory damages for humiliation, emotional distress and other damage caused by the Defendant's illegal conduct.

**[148]** That the Court grant punitive damages for the Defendant's malicious and recklessly indifferent conduct.

**[149]** That the Court grant Plaintiff all lost revenue due to Plaintiff having to litigate this case for this lengthy period of time and would have been entitled to enjoy those benefits, if not conspired and retaliated against by the Defendants.

**[150]** That the Court grant Plaintiff cost and expenses of litigation, including reasonable attorney fees, pursuant to title VII and 42 U.S.C. 21 section 1988.

**[151]** That the Court grant Plaintiff a jury trial.

**[152]** That the Court grant Plaintiff all other relief the Court deems just and proper.

**[153]** That the Court grant Plaintiff temporary, preliminary and permanent injunctive

relief prohibiting the Defendants from engaging in further fraudulent and conspiratorial schemes to cause serious harm to Plaintiff.

Respectfully submitted on this 21st day of August 2025.

Noel Vincent Thomas

14004 Nephi Place, Apt. 103

Tampa, Florida 33613

Tel: (813) 817-7667

Nlthms44@gmail.com


## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial on all issues by jury.

38